The first case for argument this morning is U.S. v. Michael Bonin. We'll hear from Ms. Miller. Good morning. Good morning, Your Honors, and may it please the Court. This is Judith Miller here from the Federal Criminal Justice Clinic on behalf of Mr. Michael Bonin. The District Court's version of impersonating a federal agent and acting as such, 18 U.S.C. 912, criminalized protected expression. Without an intent to deceive or defraud, it criminalized Halloween and theater. Without an assertion of authority, it criminalizes prank calls and pickup lines. And without some kind of causation, it criminalizes a five-year-old attempting to impersonate a police officer. No federal statute that criminalizes false speech goes this far. Now, the First Amendment issue and the statutory interpretation issue are intertwined. The First Amendment says the statute can't mean what the District Court interpreted it to mean. Statutory interpretation then says that the best way to interpret the statute to avoid the constitutional problems is the three limiting constructions that we proposed below in briefing before this Court. That's an assertion of authority requirement, an intent to defraud, and some species of causation. Now, I want to be clear on where the government and I disagree. The government appears to think that the demands offense, that's the other version of 912, has all three requirements. They also think that the acts offense, what Mr. Bonin was charged with, has none of those three. I want to address each of those three issues in turn, starting with intent. It's important to start with the fact that the government actually concedes that the District Court erred in declining to give a knowing instruction to the jury. The disagreement here is that the government doesn't agree that knowing also includes an intent to deceive. Without an intent to deceive, however, the statute just criminalizes theater, movies, TV procedurals featuring United States marshals. It's also contrary to Alvarez. Alvarez interprets the word falsely, which was in the Stolen Valor Act, as well as Section 912, to mean making a false statement with the intent that that false statement should be believed. The government offers no explanation as to why the same word in this statute, falsely, does not include an intent to be believed. This position also contradicts every federal court since Alvarez to address a First Amendment challenge to an impersonation statute or a related statute. Let me ask you about that. Are there other such challenges similar to this, or is this the first time this type of argument has been raised? So, there are some other challenges. The Ninth Circuit has the Thomson-McGill case, where the Ninth Circuit did interpret Section 912 to include an intent to deceive. The Fourth Circuit has an impersonation case. It's actually a state impersonation case rather than a federal impersonation case, but they still apply Alvarez and also include an intent to deceive. And, in fact, the state in that case filed an amicus brief saying the statute definitely includes an intent to deceive. There are also these wearing cases, someone who wears a false insignia. Now, the statute's been changed since then, but they're still on point, especially given the conduct at issue in this case. And in those wearing cases, again, it's both the Ninth and Fourth Circuit for some reason, and they both also interpret the statutes to require an intent to deceive. So, I don't see how you get around an intent to deceive for this case as well. What was the defendant's theory at trial, given the evidence of his behavior in the theater, that could easily, it seems to me, have been interpreted as trying to intimidate and force other people in the theater to believe he was a marshal, was authorized to be in possession of this firearm, and so on? His theory at trial, excuse me again, his theory at trial was that he had tried to explain himself as a fugitive recovery agent and did so in terms of being a U.S. marshal and did so in such a confusing manner that, in effect, the officers believed he was a U.S. marshal based on the words that he used. It's worth even looking at the words he used at trial to explain what is a fugitive recovery agent and how confusing his explanation was. Just to give as an example, Mr. Bonin introduced into evidence his fugitive enforcement ID card and was asked to explain to the jury, what does the back of the card mean? He said that it, and I'm quoting, that it sets out, here's the quote, the laws that allow us to pursue fugitives of the U.S. marshal's jobs are. It's not really clear exactly what that means, but it is the case that one could interpret that statement to mean a claim of being a U.S. marshal, even though that's not at all what Mr. Bonin intended to convey. In fact, he was trying to explain to the jury in that moment how he's not like a U.S. marshal. So certainly, just essentially mistake, miscommunication was the theory at trial. But there's also just the question of was Mr. Bonin, did the jury think that Mr. Bonin was being a blowhard? This was an instruction, excuse me, this is something that came up, comes up in Rippey and it also comes up in the cases from other circuits, that the statute doesn't prohibit people, what's called mere bravado or mere puffery. If the jury thought that Mr. Bonin did say he was a U.S. marshal, but was just kind of puffing himself up, they could have convicted on that basis as well, even though that would be improper had the jury been properly instructed. What about him coming back inside the theater and saying to the other patrons, look, I am a U.S. marshal? I mean, as to that, so it's really unclear on what basis the jury convicted. And the question for harmlessness, which is I think what you're getting at, is viewing the record as a whole, is it harmless beyond, excuse me, is the error harmless beyond a reasonable doubt? Is there a reasonable doubt viewing the record as a whole? And it's just not clear. Maybe that was what the jury convicted him on. Maybe they convicted him on what happened out in the hallway. For what happened in the theater, it could well be that the jury thought that that didn't rise to the level of an impersonation,  he was just blowing off steam, that it didn't cause anyone to change their behavior. The testimony from Mr. Alfitsch was that he stayed in the theater and watched the end of the movie. So although we're certainly not endorsing Mr. Bonin's behavior that day as especially fantastic, the question is, is there a reasonable doubt about whether he violated the statute viewing the record as a whole? And there is. How does a person act accidentally as a police officer or a marshal? Well, in this case, he could have acted accidentally or portrayed, excuse me, accidentally impersonated a police officer by creating the impression without intending to that he was a U.S. marshal. And that's via his explanation, via the badge and gun that he was carrying as part of being a fugitive recovery agent. Which the officers appear to have interpreted as him being a law enforcement officer. He understood that everything he was doing was trying to convey that he was not a law enforcement officer. He just did that very, very badly. And the jury could have concluded that the statute prohibits essentially coming off as a U.S. marshal, regardless of whether one intended to portray oneself as a U.S. marshal. And I should also add, as to harmless error, that the jury could well have credited Mr. Bonin's testimony. That he did not intend to portray himself as a U.S. marshal. He did not intend to deceive anyone. And he certainly wasn't trying to get out of some kind of trouble. As far as he was concerned, he didn't believe he was in trouble. He thought he was acting entirely lawfully. And the testimony of John Howard, the person who trained him on concealed carry, as well as his fugitive recovery trainer, supported Mr. Bonin's own testimony. That he was trying to portray himself as a fugitive recovery agent. He may not have done that especially well, but he wasn't trying to impersonate anyone. I'll move on to assertion of authority, unless the court has further questions about intent. So as to acting under authority, there's really a strong textual hook for this requirement. The statute requires impersonating a federal agent acting under the authority of the United States. And acting as such then means acting as a federal agent acting under the authority of the United States. There's also, it essentially incorporates the previous clause into the second clause. There's also strong case law support for this requirement. RIPI interprets acting under the authority the same way that we're proposing that it should be interpreted. And RIPI also incorporates the acting under the authority language from the first part of the statute into the demands requirement in the second part of the statute. RIPI is a demands prong case though. RIPI is absolutely a demands prong case. But the logic applies to the acts as well. And that's how other circuits have interpreted it. And that's how other circuits have interpreted it. For example, in the Rosser case from the DC circuit, which we cite in the briefing, it expressly distinguishes between performing an overt act that asserts implicitly or explicitly authority that the impersonator claims to have by virtue of the office he intends to hold. A lot of words for asserting authority. Versus merely an overt act consistent with the impersonation. And that's the line that a number of circuits have drawn in addition to Rosser. And I cite those cases in my briefing. Again, I would just say that the government claims that Mr. Bonin asserted authority. That he asserted the authority of a U.S. Marshal to carry a firearm, to get out of trouble. But they never had to prove that to the jury. There's ample evidence to believe that Mr. Bonin genuinely believed he was not in trouble, and therefore he wouldn't have asserted any authority. All we're asking on this issue is that this court interpret the statute to require a jury instruction about assertion of authority, and that the government be required to prove that, if it is indeed the government's theory. I'm going to shift to trial errors, given the amount of time that I have left. Unless the court has any further questions about the statute. Can you elucidate why there was the switch of the judge so soon before the trial? Your Honor, I don't know. That was just a decision that was issued by the Northern District of Illinois Executive Committee. We learned of it on Saturday, which I understand is the same day the decision was made. The Saturday before the Monday trial. That's part of, I think, why this case really was unique. It was a legally and factually rich case that was reassigned to a visiting judge from out of circuit the Saturday before the Monday trial. The resulting trial was, excuse me, really a perfect storm of error. There were two critical trial errors that I want to focus on. That's the badges and the text messages. And together they fundamentally transformed the trial. Now the visiting judge's own words show an abuse of discretion in allowing the government to show the badges and other items, the other evidence, to the jury. This is a quote. I have overruled the objection, basically because I don't know what we're looking at. The judge overruled the objection to the evidence because he didn't know what the evidence was. Now the government offers post hoc justifications in its briefing for why the judge lawfully could do that. They're wrong, and I'm going to address that in a minute. But I want to just note that they're ultimately irrelevant because the district judge, who were asked to determine whether he abused his discretion, he didn't give those justifications. The fact is the judge abused his discretion, and after the fact, excuses don't get around it. As to the text messages, there's just no legal basis for interpreting two witnesses who testify differently as a basis for introducing a prior consistent statement. You need some kind of a claim that the witness changed their story. Disagreement isn't enough. And the government offers no case law supporting the proposition that mere disagreement is enough. And it would actually create a circuit split to hold that mere disagreement is enough to introduce a prior consistent statement. And there's really a logic underneath that. If disagreement were enough, then prior statements would become the rule, not the exception. We'd be admitting prior statements any time two witnesses disagree with each other on a fact that's important to the jury's verdict. Essentially, any time there's a defense case, the question would be, who made more out-of-court statements rather than focusing on what the in-court testimony is, which, of course, is what a trial is supposed to be about. How do you distinguish that from just old-fashioned impeachment? Well, that would be an issue. This court does expressly distinguish impeachment from the kind of charge of recent fabrication that allows for the introduction of a prior consistent statement. I think I quoted in my briefing, but the words are something to the effect of a charge of impeachment, excuse me, a charge of recent fabrication is a subset of impeachment for credibility. If mere impeachment were enough, we really would just be using prior consistent statements all the time. It would transform the way that a trial works. The Supreme Court in United States versus Tomei actually focused us on this particular danger, that even with the prior consistent statement rule, trials are supposed to be about the testimony that happens in the courtroom, not who has more prior consistent statements. Now, the introduction of the badges and the text messages was not harmless. It fundamentally transformed the trial. For the text messages, it summarized the government's entire case for the jury. And there's a First Circuit case that's especially helpful just on this particular issue, United States versus Lozada Rivera. I cited in the briefing, so the citation is there. But in addition to that, the text messages were the only written corroboration of the government's case. Otherwise, the case amounted to a number of eyewitnesses disputing what happened in the theater with various inconsistencies and various consistencies. Adding written corroboration really transformed what was left. It also gave undue weight to Mr. Olfitch's testimony, and it characterized Mr. Bonin as drunk and threatening, neither of which were things that Mr. Olfitch had testified to earlier, both of which were, of course, extremely prejudicial, especially the threatening point when we're talking about a gun in a theater. The badges were no less transformative. They fundamentally changed the case from what happened on December 4, 2014, in the AMC Theater, to was Mr. Bonin a police impersonator? That's exactly what Rule 404 prohibits, and no reasonable jury could get past that. The government's examination ensured as much. They repeated the character claims five times, and they crossed Mr. Bonin himself, not some incidental witness. This was also the focus of their cross-examination. It was a core of it, not an incidental issue, and it was inflammatory. They slammed the bags of evidence down on the podium. They hauled the bags in the air and cut them open, waving them around before the jury. It was a spectacle that the jury couldn't possibly ignore, even with a curative instruction. I believe I have reserved three minutes of my time for rebuttal, so I would just ask the court to vacate this case and remand for a new trial or any alternative to strike the statute down as facially unconstitutional. Thank you, Ms. Miller. For the government, Mr. Pruitt. May it please the court, counsel. I want to first address counsel's first comment about this statute criminalizing Halloween, theater, or five-year-olds pretending to be law enforcement. It is clearly not the case. There has to be a false pretense of federal authority and an overt act requirement, acts as such. And as the district court, I think, correctly instructed the jury, that requires that the defendant act in a manner consistent with the pretended authority of an officer or employee of the United States. And here we're talking about law enforcement. Someone dressed up for Halloween carrying a candy bag is not going to be found or charged with having acted in a manner consistent with federal law enforcement. Someone acting on a stage is not acting in a manner consistent with being a federal law enforcement officer, nor is a child with a fake badge or a fake gun. However, someone who puts on a law enforcement tactical vest that says FBI on the back, puts a gun in their hand and a badge around their neck, and walks around in public or walks onto a school ground, they are acting in a manner consistent with being a federal law enforcement officer because they're projecting federal authority. They're doing something that only law enforcement can do. And it is that part of the instruction that separates what might be protected speech or puffing or the kind of conduct that you wouldn't want to see prosecuted, and what separates that from the kind of conduct we're dealing with here. So I don't think there's any danger of that. And in fact, this statute could be applied. You don't need speech to violate this statute at all. The example I gave. You could have the example of someone driving down the highway with flashing lights on their car, a badge emblem on the side of the car. They're acting in a manner consistent with a police officer. They don't have to say a word at all in order to do that. Here, though, Mr. Bonin did more than that. He wore a gun next to a badge on a law enforcement style duty belt, which both of the officer witnesses in this case commented on. It's immediately thinking that he's law enforcement. Then he took it another step. He paired that with a statement, I'm a United States marshal. That surely, that conduct, so even whether facially or as applied to the facts of this case, there's no question that the application of this law was constitutional and there are no First Amendment issues. With respect to this argument as far as an intent to defraud or an intent to cause something, I want to touch on that. In counsel's briefs or in defendant's briefs, they refer to the requirement being an intent to defraud. There should be an intent to defraud written into the statute. Here, what we heard today was intent to deceive, which is different. I want to just touch on the intent to defraud part for a second. The Lepovich decision, which is talked about in the briefs, the 1940 Supreme Court decision, that was dealing with a version of the statute that began whoever with an intent to defraud acts as such or tries to obtain a thing of value from a person. What the Supreme Court was struggling with there was, of course, if you're trying to obtain a thing of value from a person falsely, you're acting with an intent to defraud. What does that phrase, intent to defraud, mean with respect to acts as such? That's what they were trying to figure out there, and that's why the Supreme Court read that causation requirement into the acts as such prong. The statute was modified after that, though. The intent to defraud was taken out of that first part of the statute. Now, the current statute we have is simply whoever falsely assumes the authority of a federal officer, I'm paraphrasing, and acts as such. I think the plain language of the statute, as interpreted by the district court and consistent with prior cases of this court, the juror was properly instructed as to what that means and was instructed in such a way that protected conduct would not be implicated. I do want to talk for a minute about the theory of trial as well. When subject to cross-examination, the defendant squarely said, repeatedly, that he never said, I'm a U.S. Marshal, over and over again. He repeated, I would never want anyone to think that. I did not say it. I would not want to give that impression. Ms. Miller's argument is the use of the text messages is more than just impeachment, that it exploits that exception. What's your response to that? I think that it was proper. Here, admittedly, the government could not find a case that dealt exactly with this situation. But here, it was the defendant's testimony that squarely implied that all of the testimony of Mr. Alfitsch, in every material respect, was false.  But on every single point that mattered, whether the defendant said he was a U.S. Marshal, whether the defendant was acting in a loud manner or belligerent manner, whether he had a gun that was visible, whether he repeated the claim to being a U.S. Marshal and coming back into the theater, on all of those material points, the defendant said, that didn't happen. The only inference from the defendant saying, none of that happened, none of what that witness said just happened, is that there's an implied charge of fabrication. And so I think that bringing the prior consistent statements of the text messages in, at that point, was appropriate and within the text of the rule. While it is not the normal situation in which this comes up, I think that it falls within what the text of the rule allowed in that instance. What about the component of recent fabrication? Does that change the analysis at all? No, Your Honor. Again, I think it's, again, not the usual situation in which this rule is invoked. The government reads that as recent relative to the conducted issue here. So it was more recent in time than the original event. And that's how the government would read that part of the rule and its application here. He wasn't being, yeah, because it's not as if the witness was being crossed with some prior inconsistent statement, and then, so it's an unusual circumstance, but again, I think it falls within the text of the rule. Do you have any further information on this late change of judge? Your Honor, I don't have any further information that's in the record, and my recollection sitting here today and again, I apologize if it's not reflected in the record, is that the judge was here visiting and it may have been the case that whatever case he was originally assigned to have, maybe a civil matter had settled or something to that effect, and there was another case. What I can say is that the judge did express before the trial began that he reviewed the record, was familiar with the prior rulings of Judge Gettleman, had discussed the case with Judge Gettleman, and was familiar with the facts. And I do take issue with the characterization that it was a legally and factually rich case. This was a pretty simple case involving three witnesses describing what was 10 minutes of interaction with the defendant in one night in a movie theater. It's a limited number of witnesses, a very limited factual universe, and despite all the briefing that's been filed in this case, a relatively discreet legal issue as to whether or not the defendant falsely impersonated a U.S. Marshal. So I think the judge was more than capable of coming onto the case and expressing he was familiar with the record and the law. Do you think the judge should have given a knowledge instruction? Yes, Your Honor. And I will just say that the proposed instructions that both the government submitted and that the defendant submitted had the word knowing in them. When we got to that point of discussing the charges, the district court had crafted its own instruction, and the government at that time did not notice that the knowing had dropped out of the instruction, and the government admits that it's an error. The statute should have, at minimum, a knowing requirement. The defense did ask for knowing? They asked for knowing and much more, but I believe knowing was part of their very robust intent instruction. So from your perspective, how do we deal with the absence of a mens rea instruction? Your Honor, I think here, while an error, it was a harmless error. Although characterized differently just now, the defense at trial was not mistake for ignorance. He very unequivocally testified, I never said I'm a U.S. Marshal. He never said that there was a mistake on his part. So we're talking about the defendant's intent here. He never said, I said that, but I just didn't understand. There's no question, and he's testified on cross-examination, I believe maybe elsewhere, that he understood he was not a U.S. Marshal. He understood that. He knew that. So if there's evidence that he said otherwise, he clearly was not laboring under some mistake that he had federal authority or was a federal law enforcement officer. He's claiming the other people were mistaken, not that he was. So I think that the theory at trial was not inconsistent with that, and so I think, since they were not instructed on the knowing, that error was harmless in this instance. And, Your Honor, I'll just touch for a moment on the badges. Again, the defendant's testimony at trial, he was asked about the badge, the identification card that he was carrying that night. The badge and identification card that he said he was carrying in connection with his fugitive recovery work, although the evidence at trial was that fugitive recovery work is unlawful in Illinois. So he talked about those. Counsel, during his direct examination, pointed out that the words United States appeared on that, and in his testimony, the defendant tried to distance himself from that. I didn't put those words on there. I didn't design that, clearly implying to the jury that to the extent the words United States or any emblem of the United States was appearing on the materials in his possession, that that's not something he had anything to do with, and it wasn't his intent. And he also expressed that he never intended anyone to think that, would never want anyone to think that he was a U.S. Marshal. At that point, we believe it was proper impeachment to mention and to point out to the jury, through cross-examination, confronting him with these other items that he had, that, for example, included a hat with an almost exact replica of the U.S. Marshal's emblem on it, with the motto of the U.S. Marshal's Service on it, and that that's something he had clearly purchased for himself. Someone else didn't give it to him. He sought that out. So it was an impeachment focused on that. And I will also say that to the extent there's any thought that that wasn't proper or was excessive, the government did not mention that cross-examination, that part of the cross-examination in its closing or its rebuttal, did not emphasize it with the jury. Also, the judge gave a limiting instruction at the defense request that they're not to consider that kind of evidence as propensity evidence. So I think to the extent there are any concerns about undue prejudice, those were addressed both by the limiting instruction and by the fact that the government didn't put undue emphasis on that or any emphasis on that exchange with the defendant during its closing or its rebuttal. Your Honors, if there are no further questions, the government simply asks that the defendant's conviction be affirmed. Thank you. Thank you, Mr. Pruitt. Ms. Miller, rebuttal. Your Honors, let me correct a few issues that the government raised. First off, as to the First Amendment, certainly the Supreme Court in Alvarez thought that 9-12 was implicated by striking down the Stolen Valor Act. That's why they talk about it in their opinion, how can we strike down the Stolen Valor Act, such that it doesn't strike down Section 9-12. And they proposed various things, such as the limiting instructions that I asked the court to give. As to the intent to defraud, we absolutely stand by our view that an intent to defraud instruction was required. At the very least, though, unknowingly instruction was required that included an intent to deceive. An intent to defraud is the most consistent with the statutory history. The revisors eliminated the express intent to defraud requirement as, and I quote, meaningless. And this court in court interpreted that revision to mean that the intent to defraud was actually included in the rest of the statute. That's why an intent to defraud requirement is still there, and that's also the position that the majority of circuits have taken. I want to specifically address the visiting judge issue. We do know, and I cited this in my opening brief, so it is in the record, that the visiting judge was assigned to a short civil case that settled on the Friday before the Monday trial, and then he was reassigned to this case the Saturday before the Monday trial. So in this particular case, he certainly wasn't preparing without me knowing about it or without the government knowing about it before we were informed of the reassignment. The earliest possible day that he could have known of the reassignment was the day that the parties settled the case, which was the Friday before the Monday trial, and then the case was reassigned that Saturday. And as for the statements that he reviewed the record or familiar with the ruling or the facts, I didn't see where the district judge said that. I don't believe he did say that. I want to specifically address the point about, on the cross, Mr. Bonin saying that he was never a U.S. marshal. The government repeatedly relies on that, but that's a statement the government elicited in its cross-examination. That wasn't a statement by Mr. Bonin on direct examination. That matters because under the collateral evidence rule, those kinds of statements can't be impeached with collateral... Excuse me, can't be impeached with extrinsic evidence, which was exactly what the government did with the badges and the social media evidence. And just as to harmlessness, I would emphasize that the standard for constitutional harmlessness is harmless beyond a reasonable doubt, not merely harmlessness, which is how the government portrays the case. I would ask the court to vacate Mr. Bonin's conviction and remand for a new trial or, in the alternative, strike the statute down as facially unconstitutional. Thank you. Great. Thank you very much. Thanks to all counsel. The case will be taken under advisement.